[Cite as *In re M.P.*, 2025-Ohio-5223.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE M.P.                                         :

A Minor Child                                      :            No. 114661

[Appeal by D.P., Father]                           :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** November 20, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. FA23113083

---

***Appearances:***

Amanda M. Bizub, *for appellant.*


SEAN C. GALLAGHER, J.:

{¶ 1} Appellant D.P., who is the father of M.P ("the child"), appeals from the juvenile court's decision overruling his objections to the magistrate's decision and the court's order of child-support establishment. For the reasons that follow, we reverse the juvenile court's decision and remand the matter for a hearing on the issue of child support.

{¶ 2} This action commenced in November 2023 when D.P. filed an application to determine custody and/or shared parenting. That application was

voluntarily dismissed, and a subsequent application to determine shared parenting was later withdrawn. The case information sheet reflects that D.P. and the child's mother M.S. are not married and D.P.'s paternity for the child was established. The juvenile court's judgment entry reflects D.P. was receiving parenting time without issue. During the pendency of the action, D.P. raised challenges pertaining to child-support establishment.

{¶ 3} Relative to this appeal, in February 2024, D.P. filed an objection to an administrative order for child support and medical support that ordered him to pay $568.68 per month plus a 2 percent processing fee.[1] The child-support computation worksheet showed no annual income for D.P. and listed his potential income as $37,960. D.P. stated in an affidavit attached to his objection that he had provided a pay stub showing his income of "$545 per week," which fluctuates; that he makes about $600 per week or $2,400 per month; and that he could not afford the amount of child support ordered.

{¶ 4} A hearing was held before the juvenile-court magistrate on November 13, 2024. Neither D.P. nor M.S. was represented by counsel. A magistrate's decision was issued on November 22, 2024. In the decision, the magistrate found in part as follows:

> The court finds that the father failed to present testimony and evidence to show that the income attributed to him in the Administrative Child Support Computation Worksheet was incorrect. The court finds that testimony from the father established that he voluntarily terminated his employment with [MetroHealth] and that he was terminated from

---

[1] This amount included $13.25 for cash medical support.

employment with Amazon. He failed to provide any evidence regarding his current income and his testimony established that [he] is voluntarily underemployed based upon his work history.

{¶ 5} Nevertheless, the magistrate found good cause for D.P.'s objection to the administrative order because a parenting-time order that had been issued by the domestic relations court was not included in the administrative-support order. The magistrate completed a guideline worksheet that was attached to the magistrate's decision. In calculating the child-support obligation for D.P., the magistrate used the same potential income that was used for the administrative-support order and accounted for the parenting-time order. The magistrate also granted a downward deviation of $25.04 to account for D.P.'s extended parenting time. The magistrate ordered, subject to the juvenile court's approval, that D.P. pay child support "in the sum of $493.22 per month" plus a 2 percent processing fee for a total of $503.08 per month.[2]

{¶ 6} On November 25, 2024, D.P. filed objections to the magistrate's decision. He attached a copy of an email he had sent the administrative agency in December 2023 with a pay stub from Lyft attached, which listed his net earnings as $575.80 for 16 hours and 45 minutes of "booked time." D.P. stated in his objections that he left MetroHealth, that he had provided proof of the amount he earns per week at Lyft, that he has no other income, and that he cannot afford to pay the

---

[2] The amount included $17.39 per month for cash medical support.

amount of child support ordered. No transcript of the hearing before the court magistrate was filed with the juvenile court.

{¶ 7} On December 6, 2024, the juvenile court issued a journal entry in which the court overruled D.P.'s objections to the magistrate's decision and affirmed, approved, and adopted that decision. On December 9, 2024, the juvenile court issued a judgment entry of support establishment.

{¶ 8} On appeal, D.P. raises two assignments of error. Under his first assignment of error, D.P. claims the juvenile court failed to adhere to statutory requirements and erred when the court imputed income to him. Under his second assignment of error, D.P. claims the juvenile court erred in finding he was voluntarily underemployed and by imputing income to him based on an artificially elevated wage. No appellee's brief has been filed.

{¶ 9} Initially, although D.P. has supplemented the record on appeal with the transcript, we are precluded from reviewing it because he failed to file a hearing transcript with the juvenile court. *See In re S.M.*, 2025-Ohio-5144 (8th Dist.). Pursuant to Juv.R. 40(D)(3)(b)(iii), "[a]n objection to a factual finding . . . shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available." Therefore, we will not consider the transcript and shall limit our review of the assignments of error.

{¶ 10} In this case, D.P. filed an objection to an administrative order for child support. The magistrate issued a decision and attached a guideline worksheet

recalculating the amount of child-support pursuant to R.C. 3119.01 – 3119.24.  The case was before the juvenile court upon D.P.'s objections to the magistrate's decision concerning the amount of child support ordered.

{¶ 11}  Pursuant to Juv.R. 40(D), when ruling on objections to a magistrate's decision, the juvenile court is required to undertake an independent review to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law.  Juv.R. 40(D)(4)(d).  Even when no objections are filed, a juvenile court may adopt the magistrate's decision "unless it determines that there is an error of law or other defect evident on the face of the magistrate's decision." Juv.R. 40(D)(4)(c).  Also, before taking action on a magistrate's decision, a juvenile court is permitted to hear additional evidence.  *See* Juv.R. 40(D)(4)(b) and (d).

{¶ 12}  Pursuant to R.C. 2151.23(G), "[a]ny juvenile court that makes or modifies an order for child support shall comply with Chapters 3119., 3121., 3123., and 3125. of the Revised Code."  For purposes of the calculation of child support, "the court or agency shall calculate the amount of the parents' child support and cash medical support in accordance with the basic child support schedule, the applicable worksheet, and the other provisions of [R.C.] Chapter 3119."  R.C. 3119.02.  There is a rebuttable presumption that the child-support obligation calculated pursuant to the basic child-support schedule and applicable worksheet is the correct amount of child support due.  R.C. 3119.03.

{¶ 13} When determining the amount of child support owed, the court or agency must determine the annual income of each parent. *Ayers v. Ayers*, 2024-Ohio-1833, ¶ 13, citing R.C. 3119.021(A). "R.C. 3119.05(A) places the burden on parents to verify their income with documentation, not on the court to verify income." *Desensi v. Eppley*, 2025-Ohio-2471, ¶ 1 (5th Dist.).

{¶ 14} "Income" is defined under R.C. 3119.01(C)(10) to mean either of the following:

> (a) For a parent who is employed to full capacity, the gross income of the parent;
>
> (b) For a parent who is unemployed or underemployed, the sum of the gross income of the parent and any potential income of the parent.

{¶ 15} Generally, a parent who claims the other parent is voluntarily underemployed has the burden of proof. *Page v. Page*, 2022-Ohio-411, ¶ 41 (2d Dist.). "Nonetheless, a parent seeking to avoid imputation of income must show an objectively reasonable basis for terminating or otherwise diminishing employment." (Cleaned up.) *Id.*

{¶ 16} For "potential income," which is currently defined under R.C. 3119.01(C)(18), to be imputed to a parent, the trial court is required to expressly determine that the parent is "voluntarily unemployed or voluntarily underemployed," and then determine what the parent would have earned if fully employed, using the criteria enumerated under R.C. 3119.01(C)(18)(a)(i)-(xi), formerly R.C. 3119.01(C)(17)(a)(i)-(xi). *Ayers* at ¶ 13, 27. These matters are to be determined from the facts and circumstances of the case, and generally the trial

court's determinations should not be disturbed on appeal absent an abuse of discretion. *Rock v. Cabral*, 67 Ohio St.3d 108, 112 (1993).

{¶ 17} "'Despite the discretion a trial court has in child support matters, the court must literally and technically follow the statutory requirements in all material respects.'" *Mayer v. Mayer*, 2022-Ohio-533, ¶ 54 (10th Dist.), quoting *Wolf-Sabatino v. Sabatino*, 2011-Ohio-6819, ¶ 88 (10th Dist.), citing *Marker v. Grimm*, 65 Ohio St.3d 139 (1992), paragraph two of the syllabus. Furthermore, "[a]n appellate court must be able to ascertain from the trial court's journal entry the amount of potential income imputed, and the trial court's reasons for imputing income to a child support obligor." *Rock* at 113.

{¶ 18} In this matter, D.P. argues that the juvenile court erred by imputing income to him as a voluntarily underemployed parent. He argues that there was no evidence that he intentionally acted to reduce his earnings and that the absence of an examination of the statutory factors renders the juvenile court's decision improper. He further argues that the juvenile court imputed income to him based on temporary and elevated COVID-related hazard pay he previously earned at MetroHealth.

{¶ 19} Though we are unable to review the transcript, the juvenile court's decision reflects that it found D.P.'s testimony established that he is voluntarily underemployed based upon his work history. More specifically, the juvenile court indicated D.P.'s testimony established that he voluntarily terminated his employment with MetroHealth, that he was terminated from employment with

Amazon, and that he failed to provide any evidence regarding his current income. However, there is no indication in the juvenile court's decision that the court determined what the parent would have earned if fully employed, using the criteria enumerated under R.C. 3119.01(C)(18)(a)(i)-(xi).

{¶ 20} We recognize that the record before the juvenile court was limited, as is the record before us. Nonetheless, we are compelled to find the juvenile court committed an error of law by failing to adhere to the statutory requirements for imputing potential income to D.P.

{¶ 21} Though D.P. speculates that the juvenile court and/or administrative agency found he was underemployed and imputed income to him based on his elevated earnings at MetroHealth, which he states included COVID-related hazard pay, the juvenile court also referenced his employment at Amazon. Further, we note that the copy of the single pay stub from Lyft, which he had emailed to the administrative agency and submitted with his objections to the magistrate's decision, reflects fewer than 20 hours of work. The juvenile court found D.P. failed to present testimony and evidence to show that the income attributed to him in the administrative child-support computation worksheet was incorrect, and it appears the juvenile court magistrate merely adopted the determination of potential income made by the administrative agency in its calculation of child support. However, the juvenile court was required to comply with the requirements of R.C. Ch. 3119 for the calculation of child support, and the particular basis for the juvenile court's findings and determinations are unclear from the record.

{¶ 22} We remind juvenile courts that an appellate court must be able to ascertain the reasons of the juvenile court for the action taken in imputing income to a parent. *See Rock*, 67 Ohio St.3d at 113. As this court has previously explained:

> [T]here must be sufficient information in the juvenile court's journal entry imposing child support (or otherwise in the record) to allow a reviewing court to discern why the juvenile court did what it did and why it determined its decision was in the best interest of the child. Without such information, we are unable to properly assess whether the juvenile court's decision was the product of a sound reasoning process or was unreasonable, arbitrary or unconscionable.

*In re K.R.B.*, 2017-Ohio-7071, ¶ 25 (8th Dist.).

{¶ 23} In this particular case, the juvenile court did not adhere to the statutory requirements under R.C. Ch. 3119, and we are unable to ascertain whether the juvenile court's decision was the product of a sound reasoning process. Given the limited record, we believe the matter should be remanded for a hearing before the juvenile court. *See In re K.R.B.* at ¶ 28.

{¶ 24} For the reasons stated herein, we reverse the decision of the juvenile court and remand the matter for an evidentiary hearing on the issue of child support. The juvenile court must comply with the applicable statutory requirements.

{¶ 25} Judgment reversed; case remanded with instructions.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
SEAN C. GALLAGHER, JUDGE

EMANUELLA D. GROVES, P.J., and
DEENA R. CALABRESE, J., CONCUR